IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEVIN LEE OLSON,<br><br>　　　　　Defendant. | Case No. 3:17-cr-26<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

The United States of America, by Christopher C. Myers, United States Attorney for the District of North Dakota, and Nicholas W. Chase, Assistant United States Attorney, submits this response to Kevin Lee Olson's (Olson's) motion to dismiss (DCD 72), which was supplemented by other filings (DCD 72-1, 84). The United States has addressed every identifiable legal challenge raised in these various filings; to the extent the United States has neglected to identify and address a legal challenge, the United States respectfully requests notice from the Court on that issue and two additional days to supplement this brief.

**I.　　OLSON CANNOT MAKE A PRIMA FACIE SHOWING THAT PROSECUTORS PURSUED CHARGES AGAINST OLSON BECAUSE OF IMPROPER INFLUENCES.**

Most of Olson's motion to dismiss is based on a claimed vast conspiracy against him, all of which was orchestrated by an alleged victim in this case (who is related to his ex-wife). According to Olson, this victim hatched the revenge plot with his ex-wife during family reunions because Olson outwitted his ex-wife in their stipulated divorce

settlement **in 2005**. (DCD 72 at 11-20.) According to Olson, this vast conspiracy includes, but is certainly not limited to,[1] this criminal prosecution. (DC 72.) This argument is factually and legally unsupported.

The authority most analogous to Olson's argument are those cases related to vindictive or selective prosecutions. The Eighth Circuit has directed that in determining whether to hold an evidentiary hearing or grant a pre-trial motion to dismiss an indictment, the defendant has the initial burden to raise credible arguments challenging the prosecutor's motivations. United States v. Kelley, 152 F.3d 881, 885−86 (8th Cir. 1998) (citing United States v. Aanerud, 893 F.2d 956, 960−61 (8th Cir. 1990) (discovery and hearing on selective prosecution defense based on tribal membership only if defendant alleges sufficient facts to take the question past the frivolous state and raises reasonable doubt as to prosecutor's purpose) and United States v. Valona, 834 F.2d 1334, 1340 (7th Cir. 1987) (hearing on outrageous government conduct defense only when defendant presents specific facts sufficient to raise significant doubt about propriety of government action)). To satisfy a prima facie case of selective prosecution, defendants must show: (1) that they were singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based

---

[1] Olson maintains the scope of this purported conspiracy also includes: (1) domestic enemies "trying to overthrow our Republic"; (2) judges dismissing Olson's civil lawsuit; (3) county officials denying Olson the right to vote at some place other than a Lutheran Church; and (4) judges, federal agents, and Fargo police officers using "slights and stratagem" against him. (DCD 72.) The United States does not address these claims other than to state that Olson has not identified any convincing factual basis for these claims or any legal authority that would require a dismissal of this prosecution.

on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights. Kelly, 152 F.3d at 885− 86 (citations omitted). "The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require 'a showing of "intentional and purposeful discrimination."'" United States v. Matter, 818 F.2d 653, 654−55 (8th Cir. 1987) (citations omitted) (rejecting defense of selective prosecution based on membership in motorcycle club). The Supreme Court has explained the burden is exacting because "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

In the present case, a United States Magistrate Judge and Grand Jury determined that there was probable cause that Olson committed a crime under 18 U.S.C. § 875(c). Moreover, Olson does not deny in his motion, and has in fact admitted repeatedly in his filings and to law enforcement, that he sent an email via the Internet, as alleged in the Indictment, stating: "It's (sic) seems the only consideration these days is when one becomes a criminal. I guess I should find you, you bitch, and shoot you in your red head!" Olson cannot overcome those findings of probable cause and demonstrate a corrupt motive, even on a prima facie level.

Assuming Olson could point to others who are similarly situated who were not prosecuted for similar conduct (which he cannot), Olson has nothing more than supposition as proof of the prosecutors' corrupt motives. Specifically, Olson believes

this vast conspiracy is fueled by a one-sided <u>stipulated</u> divorce settlement, executed twelve years ago. Olson believes he outsmarted his ex-wife in these negotiations, driving her and her relatives to seek revenge more than ten years later (apparently a slow-developing scheme). The factual linchpin of Olson's revenge-for-one-sided-divorce-settlement theory is that his ex-wife was uncharacteristically friendly and pleasant to him when Olson saw her in a Verizon Wireless store two months after Olson was charged in this case. (DCD 72 at 13.) Not only is that nonsensical, Olson himself appears to be equivocal in his own theory, stating his theory in the form of questions. (<u>Id.</u>) Accordingly, Olson's observations and inferences drawn from those observations are not sufficient to raise credible doubt regarding the prosecutors' motives for pursuing this case. See <u>Kelley</u>, 152 F.3d at 885−86.

## II.    OLSON CANNOT RELY UPON A JUSTIFICATION DEFENSE BECAUSE THAT DEFENSE DOES NOT EXIST.

Another theme throughout Olson's motion is the **real victim** in this case **is Olson** and that his otherwise criminal conduct was justified by the injustices wrought upon him by federal, state, county, and city officials in all branches of government. Specifically, Olson claims he is being prosecuted for merely "attempting to exercise [his First Amendment rights] **and redress grievances**!!!!" (DCD 72 at 5 (emphasis added).) Based on the United States' research regarding prosecutions under 18 U.S.C. § 875(c), there is not a "justification" or "redress grievances" defense available. Olson does not and cannot point to any authority that states otherwise. There are many legal methods of seeking to redress grievances; however, emailing a threat to shoot someone in the head is

not legally justified under any imaginable scenario.  Accordingly, all of Olson's claims regarding his victimization, that people did not respond to him the way he wanted, and that people did not pay enough attention to him and his correspondence, actual or invented, are irrelevant in this case—and, certainly, are not a basis for dismissing the Indictment.

### III. OLSON CANNOT CLAIM A JURISDICTIONAL DEFENSE UNDER 18 U.S.C. § 875(c) THAT WOULD ALLOW HIM TO <u>LEGALLY</u> THREATEN HARM  TO PEOPLE AS LONG AS THEY ARE CITIZENS OF NORTH DAKOTA.

Olson argues that he cannot be prosecuted under 18 U.S.C. § 875(c) because he and the intended recipient of his alleged email threat are both citizens of North Dakota. (DCD 72 at 6, 29, 34.)  Olson reasons that a communication between two residents of the same state is not an interstate communication.  Moreover, Olson argues that his alleged threat was not related to Interstate Commerce."  (<u>Id.</u>)

The text of 18 U.S.C. § 875(c) does not specify any state residency requirements of either the sender or receiver of a threat.  Olson does not and cannot cite any authority in which a court had added such a residency requirement.  What 18 U.S.C. § 875(c) does require is a showing that the threatening communication be "transmit[ted] in interstate or foreign commerce . . . ."  18 U.S.C. § 875(c).  The Eighth Circuit and every other federal court that has considered this issue has determined that Congress has the authority under the Commerce Clause to regulate transmissions via the Internet.  In <u>United States v. Trotter</u>, the Eighth Circuit explained Commerce Clause authority:

> The Commerce Clause of the Constitution grants Congress the power to
> regulate interstate commerce.  U.S. Const. Art. 1, § 8, cl. 3.  This includes

5

the ability to regulate channels of interstate commerce, instrumentalities of interstate commerce, and those activities that substantially affect interstate commerce. United States v. Lopez, 514 U.S. 549, 558−59, 115 S. Ct. 1624, 131 L.Ed.2d 626 (1995). No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated. See, e.g., United States v. Corum, 362 F.3d 489, 494−95 (8th Cir. 2004).

478 F.3d 918, 920−21 (8th Cir. 2007). In Trotter, the Eighth Circuit ultimately determined that "[w]ith a connection to the Internet, [the computers at issue] were part of 'a system that is inexorably intertwined with interstate commerce' and thus properly within the realm of Congress's Commerce Clause power. Id. (quoting United States v. MacEwan, 445 F.3d 237, 245 (3d Cir. 2006)); see also MacEwan, 445 F.3d at 244 ("Congress clearly has the power to regulate the Internet because the Internet is an instrumentality and channel of interstate commerce); United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004 (stating that "[c]ongress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact."); Lopez, 514 U.S. at 558 (stating that Congress has the power to regulate the instrumentalities of interstate commerce even though the wrongful conduct may occur wholly intrastate).

In the present case, Olson does not dispute that he sent the email at issue via the Internet, as alleged in the Indictment. This alone satisfies the Interstate Commerce requirement. Moreover, Olson does not dispute that he sent his email from North Dakota to an office in Washington, D.C. Accordingly, Olson's Commerce Clause argument is without merit.

**IV.    OLSON'S ARGUMENT THAT THE CASE SHOULD BE DISMISSED BECAUSE THE UNITED STATES DID NOT PROVIDE ALL OF THE EVIDENCE TO THE GRAND JURY IS NOT SUPPORTED IN FACT OR LAW.**

Olson argues at several points in his motion that the United States failed to provide the Grand Jury and judges with all his communications between himself and the recipient of his alleged threatening email.  (DCD 72 at 28−31.)  The legal authority closest to these arguments are those cases in which a prosecutor has not provided "substantial exculpatory evidence" to the grand jury.  In such cases, the Ninth Circuit has directed:

> It is clear, however, that when a duly constituted grand jury returns an indictment valid on its face, no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision.  Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L.Ed. 397 (1956).  To do so would further invade the independence of the grand jury."

United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974).  In United States v. Romero, 585 F.2d 391, 399 (9th Cir. 1978), the Ninth Circuit recognized that there might be a situation where "a complete lack of evidence might serve to invalidate an indictment. . . ."  In Romero, the Ninth Circuit further explained:  "[c]ontrary to the obligation imposed upon the prosecution at trial, the Government is not required to present all evidence that might be exculpatory to a grand jury."  Id.  In the present case, Olson does not and cannot argue that there is a "complete lack of evidence."  He concedes repeatedly in his filings that Olson, indeed, sent an email, as alleged in the Indictment.  Moreover, other than repeat the undisputed truism of "the whole truth and nothing but the truth," Olson's motion to dismiss does not identify any evidence that would negate the impact of his alleged threatening email.  Rather, the thrust of the

7

allegedly withheld "evidence" relates to Olson's claims of injustices that he has suffered at the hands of various officials. As argued above, there is not a justification defense in this case. Accordingly, Olson's argument that not all of the evidence was presented to the grand jury is without merit.

Dated: October 3, 2017

                        CHRISTOPHER C. MYERS
                        United States Attorney

            By:    /s/ *Nicholas W. Chase*_____
                    NICHOLAS W. CHASE
                    Assistant United States Attorney
                    Quentin N. Burdick United States Courthouse
                    655 First Avenue North - Suite 250
                    Fargo, ND  58102-4932
                    (701) 297-7400
                    ND Bar Board ID No. 05361
                    Nick.Chase@usdoj.gov
                    Attorney for United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEVIN LEE OLSON,<br><br>　　　　　Defendant. | Case No. 3:17-cr-26<br><br>**CERTIFICATE OF SERVICE** |

　　　　I hereby certify that on October 3, 2017, the following document(s):

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

　　　　　　　　　　Johnathan R. Judd

　　　　I further certify that a copy of the foregoing document will be mailed by first class mail, postage paid, to the following non-ECF participant(s):

　　　　　　　　　Mr. Kevin Lee Olson
　　　　　　　　　　P.O. Box 9019
　　　　　　　　　　Fargo, ND  58106


　　　　Dated:  October 3, 2017

　　　　　　　　　　　　　　　　　　　　 /s/ Linda J. Collins
　　　　　　　　　　　　　　　　　　　　Legal Assistant
　　　　　　　　　　　　　　　　　　　　Office of the United States Attorney